UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STARK DRIVE LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHRISTIAN ADEL MICHAEL, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-04904-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 29 |

## INTRODUCTION

The plaintiff is Stark Drive, LLC, a limited liability company registered in New Jersey with its principal place of business in Stockholm, Sweden.[1] The defendants are Mate.Bike International (incorporated in Denmark) and its founder, Christian Michael, a resident of Denmark.[2] Both companies offered similar electronic bicycles (called eBikes) on Indiegogo, an online crowdfunding platform.[3] Stark Drive claims the following: (1) misrepresentation of copyright in violation of 17 U.S.C. § 512(f) based on an alleged Digital Millennium Copyright Act ("DMCA") notice that the defendants sent to Indiegogo, which then canceled Stark Drive's campaign; (2)

---

[1] Am. Compl. – ECF No. 28 at 2 (¶ 4).

[2] *Id.* (¶¶ 5, 6).

[3] *Id.* at 4 (¶¶ 11–12).

ORDER – No. 18-cv-04904-LB

misuse of copyright in violation of 17 U.S.C. § 512 by those same acts; (3) tortious interference with contract; and (4) a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.[4] The defendants moved to dismiss for lack of federal-question, diversity, and personal jurisdiction.[5] The court grants the motion. There is no effective DMCA notice and thus no federal-question jurisdiction. There is no diversity jurisdiction. The court declines to exercise supplemental jurisdiction over the state claims. The dismissal is with leave to amend because at the hearing, the plaintiff said that it could state a Lanham Act claim.

## STATEMENT

### 1. The Alleged DMCA Notice

The parties both offered eBikes through the crowdfunding platform Indiegogo, which is based in California.[6] According to the complaint, in February 2017, Mr. Michael "posted comments on Mate.Bike's Indiegogo Platform campaign page claiming that Stark Drive's campaign [was] a scam that [was] far below the cost of the materials for Mate.Bike and an impossibility at the $399 USD price."[7] As a result, Stark Drive claims that it lost supporters, who defected to Mate, and precipitated an investigation.[8] On February 23, 2017, Mate's attorney Simon Kristoffersen sent Indiegogo a letter about Stark Drive, which stated in part:

> We complain against the conduct of Stark Drive which we believe is a violation of your Terms of Use and Community Guidelines.
>
> Furthermore, we claim that Stark Drive is a fake setup aimed to commit fraud and steal the backers['] money without providing the campaign perks.
>
> . . . .
>
> We request that you
>
> A.  Look into the company Stark Drive LLC and the persons behind, to confirm that this is in fact a real company and real persons.

---

[4] *Id.* at 1 (¶ 1).

[5] Mot. – ECF No. 29. All parties consented to magistrate-judge jurisdiction. Consent Forms – ECF Nos. 8, 15.

[6] Am. Compl. – ECF No. 28 at 2 (¶ 7), 4 (¶¶ 11–13).

[7] *Id.* at 8 (¶ 37).

[8] *Id.* (¶ 39).

B. Assess compliance with [its] Terms of Use/Community Guidelines[.]

C. Suspend the Stark Drive campaign and take appropriate actions in this respect, if the results of point A and/or B warrants such.

. . . .

In the fall of 2016 a person called Oscar Stark started harassing Mate.Bike both on Facebook and on Indiegogo with negative posts. The posts soon started to include advertising for another electrical bike called Stark Drive. Reps from Stark Drive also contacted followers and backers of Mate.Bike with negative comments about Mate.Bike and promotions of Stark Drive.

On 15 February, Stark Drive launched a campaign on Indiegogo which is currently raising money. . . .

Due to the harassment Mate.Bike has looked further into the Stark Drive and the founds and company behind Stark Drive. The results of this investigation indicate fraud.

. . . .

The Stark Drive campaign is overall a copy of the Mate.Bike campaign – from graphics, presentation of specs, even full sentences and use of pictures. . . .

This is a violation of Mate.Bike's IP rights.

. . . .

In the Stark Drive campaign, they wrongfully call Mate.Bike and other products a failure. . . .

This misuse and degrading of the Mate.Bike trademark is a violation of trademark legislation.

. . . .

[By marketing itself on Mate.Bike's Facebook page, commenting on posts, and sending direct messages that are marked as spam, Stark Drive is engaging in] . . . a textbook example of unfair marketing. . . .

There is no company info noted anywhere, so we have not been able to verify that this company even exists.

. . . .

Regardless of whether it is a legit company . . . , the way Stark Drive conduct[s] business is, in our opinion, in violation of your code of conduct and should not be promoted.

If the company and/or the persons behind it are in fact fakes, this is a criminal case of fraud.

. . . .

Simultaneously with this complaint we are preparing infringement notices in regards to the Digital Millennium Copyright Act of 1998 (the "DMCA").

We encourage you to investigate Stark Drive. While you do so, we propose to

suspend the Indiegogo platform.[9]

Indiegogo "acknowledged receipt" of the complaint and "informed Stark Drive one month later that a DMCA was received."[10] Also, "[a]t the same time of the Indiegogo Complaint being sent to Indiegogo, Michael used his personal Facebook account (not Mate.Bike's Facebook account) to message the CEO of Stark Drive, stating 'Goodbye Oscar ☺.'"[11]

Indiegogo terminated Stark Drive's campaign without notice and without giving Stark Drive an opportunity to give its side of the dispute.[12] Stark Drive lost $285,062 in donations, which Indiegogo refunded to donors.[13]

### 2. Factual Allegations Regarding Personal Jurisdiction

Mate does substantial business in California.[14] Its sales totaling almost $20 million "were conducted and concluded via a California-based internet marketplace," the Indiegogo platform.[15] For its first campaign, Mate obtained donations of $6.8 million exclusively through the Indiegogo California-based crowdfunding marketplace.[16] During that campaign, the defendants continually interacted with their backers via the Indiegogo platform with over 100 updates posted between August 16, 2016 and July 16, 2018.[17] They promptly responded to user comments.[18] They raised

---

[9] The complaint cites the letter and says that Mr. Michael sent it. *Id.* at 8–9 (¶ 40). The defendants attach it to their motion to dismiss. Indiegogo Complaint – ECF No. 31-1 at 2–5. The court considers the letter under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).

[10] Am. Compl. – ECF No. 28 at 9 (¶ 43).

[11] *Id.* (¶ 44).

[12] *Id.* at 10 (¶ 48).

[13] *Id.* (¶ 49).

[14] *Id.* at 3 (¶ 9).

[15] *Id.* at 6 (¶ 24).

[16] *Id.* at 7 (¶ 27).

[17] *Id.* (¶ 28).

[18] *Id.* (¶ 29) (comments section garnered at least 9127 comments and "most . . . received a prompt response" from Mr. Michael or another company representative).

$13 million for their second complaint, again through the Indiegogo platform.[19] Again, they interacted with backers and responded to comments.[20] An article posted on www.inverse.com described an interview with a Mate founder and said that 25% of sales from the first campaign and 30% of sales from the second campaign were to "Americans."[21]

The complaint also advances a California forum-selection clause as a basis for jurisdiction because (1) the plaintiff is a third-party beneficiary of the terms of use between Indiegogo and the defendants or (2) the terms of use between Indiegogo and the plaintiff are enforceable against the defendants "under principles of contract law."[22] The relevant provision is as follows:

> **Venue.** If you are a resident of the United States, arbitration may take place in the county where you reside at the time of filing. For individuals residing outside the United States, arbitration shall be initiated in the State of California, United States of America, and you and Indiegogo agree to submit to the personal jurisdiction of any federal or state court in San Francisco County, California, in order to compel arbitration, to stay proceedings pending arbitration, or to confirm, modify, vacate, or enter judgment on the award entered by the arbitrator. Subject to and without waiver of the arbitration provisions above, you agree that any judicial proceedings (other than small claims actions in consumer cases) will be brought in and you hereby consent to the exclusive jurisdiction and venue in the state courts in the City and County of San Francisco, California, or federal court for the Northern District of California.[23]

## STANDARD OF REVIEW

**1. Rule 12(b)(1)**

A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject-matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed

---

[19] *Id.* (¶ 31).

[20] Id. at 7–8 (¶¶ 32–33).

[21] *Id.* at 8 (¶ 34–35)

[22] *Id.* at 3–4 (¶ 9c)

[23] Talcott Decl., Ex. A – ECF No. 30-1 at 7. The court considers the terms of use under the incorporation-by-reference doctrine. *Knievel,* 393 F.3d at 1076–77.

in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). But in deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court for evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1922); *see St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004); *see McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

### 2. Rule 12(b)(6)

"On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Mere conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." *Chavez*, 683 F.3d at 1108 (quoting *Twombly,* 550 U.S. at 555). Indeed, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez*, 683 F.3d at 1108 (citing *Iqbal,* 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chavez*, 683 F.3d at 1108-09 (citing *Iqbal,* 556 U.S. at 678). "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Chavez*, 683 F.3d at 1108-09 (quoting *Iqbal*, 556 U.S. at 679).

The background rule here is Rule 8(a)(2), which states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s "pleading standard . . . does not require 'detailed factual allegations,'" even after *Iqbal* and *Twombly*, and "'[s]pecific facts are not necessary' for pleadings to satisfy Rule 8(a)(2)." *Iqbal*, 556 U.S. at 678 ("detailed"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009) ("specific") (quoting *Erickson v. Pardus,* 551 U.S. 89 (2007)). "The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).

## ANALYSIS

### 1. Copyright Claims

As a basis for the court's jurisdiction, the plaintiff alleges that the February 23 letter was a DMCA notice that resulted in Indiegogo's suspending Stark Drive's campaign.[24] Among other deficits, the letter was not submitted under penalty of perjury and thus was not an effective DMCA notice. The plaintiff does not state a federal claim, and the court does not have federal-question jurisdiction.

The DMCA provides a mechanism for a copyright owner to request removal of infringing content from a web-publishing platform. 17 U.S.C. § 512(c). The copyright owner must send a takedown notice to the service provider under § 512(c)(3), and then the service provider must take down the infringing content "expeditiously" or face infringement liability. *Id.* § 512(c)(1)(C) & (c)(3). Under § 512(f), if a person "knowingly materially misrepresents" that material or activity infringes a copyright, that person is liable for damages, including fees and costs, incurred by the alleged infringer. *Id.* § 512(f).

---

[24] Am. Compl. – ECF No. 28 at 11–12 (¶¶ 42–48).

An "effective" DMCA notification must be a written communication "to the designated agent of a service provider that includes substantially the following:"

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address which the complaining party may be contacted.
>
> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 412(c)(3)(A). Compliance is "not 'substantial' if the notice complies with only some of the requirements of § 512(c)(3)(A)." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007). Among other elements, the February letter was not submitted under penalty of perjury. This is not effective notice under the DMCA. *Id.*

There is no federal-question jurisdiction.

There also is no diversity jurisdiction over cases involving foreign plaintiffs who sue foreign defendants. *Faysound Ltd. v. United Coconut Chemicals, Ind.*, 878 F.2d 290, 294 (9th Cir. 1989). The plaintiff is a limited liability company registered in New Jersey, and its only member — Oscar Stark — is a citizen of Sweden and Canada.[25] It thus is a citizen of Sweden and Canada because a limited liability company "is a citizen of every state in which its individual

---

[25] Am. Compl. – ECF No. 28 at 2 (¶ 4); New Jersey Certificate of Formation, Ex. B to Talcott Decl. – ECF No. 30-2 at 2 (members are "Stark Partners" in Stockholm, Sweden); New Jersey Business Gateway Entry, Ex. C to Talcott Decl.– ECF No. 30-3 at 2–4 (Oscar Stark is the only principal and has an address in Stockholm, Sweden).

owners/members are citizens." *Johnson v. Columbia Props. Anchorage,* LP, 437 F.3d 894, 899 (9th Cir. 2006). The defendants are Danish.[26] The plaintiff conceded at the February 14, 2019 hearing that there is no diversity jurisdiction.

The court declines to exercise supplemental jurisdiction over the state claims. 28 U.S.C. § 1367(a) & (c)(3).

**2.  Personal Jurisdiction**

The defendants also move to dismiss for lack of personal jurisdiction. The plaintiff counters that jurisdiction is satisfied by the forum-selection clause in the terms of use between Indiegogo and its users, the DMCA notice is purposeful direction sufficient to convey jurisdiction, and in any event, there is specific jurisdiction over the defendants under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2).[27] There is no personal jurisdiction.

First, as the court held in its earlier order dismissing the initial complaint, the plain terms in the venue provision show that the provision applies only to disputes between Indiegogo and an Indiegogo user. It does not establish jurisdiction over disputes between two Indiegogo users such as the parties.[28]

Second, there is no federal claim under the DCMA and thus no basis for asserting personal jurisdiction.

Third, the related point is that without a federal claim, the federal long-arm statute does not establish jurisdiction. "The exercise of Rule 4(k)(2) as a federal long-arm statute requires the plaintiff to prove three factors:" (1) the claim against the defendants arises under federal law; (2) the defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (3) exercising jurisdiction comports with due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

---

[26] Am. Compl. – ECF No. 28 at 2 (¶¶ 5–6).

[27] *Id.* at 3 (¶ 9) (jurisdiction based on specific jurisdiction (in the form of activities directed toward California or the alleged DMCA notice), general jurisdiction based on Mate's substantial presence in the internet marketplace in California, and the forum-selection clause).

[28] Order – ECF No. 27 at 3.

1159 (9th Cir. 2006); *see* Fed. R. Civ. P. 4(k)(2). The court does not address (for now) whether exercising jurisdiction comports with due process.

## CONCLUSION

The court grants the motion to dismiss for lack of jurisdiction and declines to exercise supplemental jurisdiction over the state claims. The dismissal of the state claims is without prejudice to the plaintiff's asserting them in state court.

At the hearing, the plaintiff asked for leave to amend to plead a Lanham Act claim. The court grants leave. The plaintiff must file any amended complaint within 21 days.

**IT IS SO ORDERED.**

Dated: March 1, 2019

_____
LAUREL BEELER
United States Magistrate Judge